**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

**IN RE**

**TAYLOR WAYNE NEACE**                                                    **CASE NO. 16-60861**
**CRYSTAL DAWN NEACE**

**DEBTORS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court in connection with Creditor 21st Mortgage Corporation's Amended Objection to Confirmation [ECF No. 51 (the "Objection")]. The limited issue remaining in connection with the Objection concerns whether Creditor is entitled to "the cost of replacing the subject mobile home, as calculated by the cost of setting up and delivering the subject mobile home to its current location plus the estimated value of the mobile home using the NADA cost approach." [*Id*. at 5.] Creditor's appraiser "estimates it would cost an additional $13,150.00 to setup and deliver the subject mobile home to its current location" and, in reliance on an affidavit from a NADA employee, further opines that "setup and delivery are not already factored into the NADA value." [*Id*. at 2; ECF No. 38 at ¶7.] The Court, having reviewed the Objection, and being fully advised, has determined that it does not need to take further evidence to resolve the Objection and can do so based on the record as a matter of law.

A debtor seeking confirmation of a chapter 13 plan has the burden to satisfy certain requirements under § 1325,[1] including that the debtor must pay secured creditors the present value of the creditors' secured claims under the plan. 11 U.S.C. § 1325(a)(5)(B)(ii). Section 506 establishes the standards used to determine that value. 11 U.S.C. § 506.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Debtors are individuals in a case under chapter 13, and the collateral at issue is a manufactured home.  The value of the mobile home must "be determined in light of the purpose of the valuation and of the proposed disposition or use of such property…."  11 U.S.C. 506(a)(1).  Here, the purpose of the valuation is to determine the secured portion of Creditor's lien to be paid over the life of Debtors' plan while Debtors retain the manufactured home. Further, in Kentucky, a manufactured or mobile home is personal property unless it is converted to real property under KRS § 186A.297.  *In re Starks*, Case No. 10-22108, 2011 Bankr. LEXIS 268, at *1, 6-8, 11 (Bankr. E.D. Ky. 2011).  Under § 506(a)(2), "replacement value" is the standard used to determine the value of personal property; "replacement value" is defined to mean "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined."  11 U.S.C. § 506(a)(2); *see also Associates Commercial Corp. v. Rash*, 520 U.S. 953, 963 (1997) (explaining that "the replacement-value standard accurately gauges the debtor's 'use' of the property" as "[i]t values 'the creditor's interest in the collateral in light of the proposed [repayment plan] reality: no foreclosure sale and economic benefit for the debtor derived from the collateral equal to . . . its [replacement] value.'" (quotation omitted)).

Creditor argues that it is entitled to increase the replacement value of the manufactured home by $13,125, the estimated costs "to setup and deliver the subject mobile home to its current location."  [ECF No. 51 at ¶2.]  The Court concludes, however, that, set-up and delivery costs may not be used as a means to increase the replacement value of a manufactured home as a matter of law, particularly where the debtor intends to retain that property.

In another recent valuation matter involving Creditor, in appraising a manufactured home under the cost approach using the NADA Manufactured Housing Appraisal Guide,

Creditor's appraiser arrived at a replacement value of the pertinent manufactured home, but then "further showed an upward adjustment of $11,375 for 'delivery and setup', arriving at a final replacement value…." *In re Thornton*, Case No. 15-6762, 2016 Bankr. LEXIS 2089, at *7 (Bankr. S.D. Ind. May 23, 2016). The court understood "this upward adjustment to be what a buyer would have to pay if the Home were still on the manufacturer's lot and had to be delivered and set up." *Id*. Creditor, however, "did not argue for this delivery and set up fee in the hearing." *Id*. Conversely, the debtor's appraiser deducted from his appraisal of replacement value the cost of removing the mobile home from the realty on which it sat. *Id*. at *9.

The bankruptcy court concluded that neither the costs of removal nor the costs of set-up and delivery can be used in connection with a valuation of replacement value, stating "[c]ourts consistently have held that, under §506(a)(2), value cannot be reduced by costs of removal and cannot be increased by costs of set up and delivery." *Id*. at *14 (citing *In re Eaddy*, Case No. 15-05744, 2016 Bankr. LEXIS 591 (Bankr. D.S.C. Feb. 23, 2016); *In re Prewitt*, 552 B.R. 790 (Bankr. E.D. Tex. 2015); *In re Gensler*, Case No. 15-10407, 2015 Bankr. LEXIS 3604 (Bankr. D.N.M., Oct. 23, 2015); *In re Fortenberry*, Case No. 14-50768, 2014 Bankr. LEXIS 5204 (Bankr. S.D. Miss. 2014); *In re Kollmorgen*, Case No. 11-10904, 2012 Bankr. LEXIS 282 (Bankr. D. Kan. 2012)). Explaining that "§ 506(a)(1) and *Rash* say that the value of a secured claim shall be determined 'in light of the purpose of the valuation and of the proposed disposition or use of such property," the court further quoted *Gensler* for the proposition that "'when the proposed disposition is to keep a mobile home at its current location, *Rash*'s rationale indicates that all moving costs, whether increasing or reducing value, should be disregarded.'" *Thornton*, 2016 Bankr. LEXIS 2089, at *15-16 (quoting *Gensler*, 2015 Bankr. LEXIS 3604, at *4)).

In *In re Eaddy*, another recent matter involving Creditor, the bankruptcy court adjusted

downward Creditor's appraiser's proposed value, as it included an additional $6,000 as "the

cost of delivering and setting up the home." *Eaddy*, *supra*, 2016 Bankr. LEXIS 591, at *10-11.

The court explained:

> Courts are free to form their own opinions based on the information provided to
> them that does not conform precisely to the conclusion presented. *In re
> Fortenberry*, Case No. 14-50768, 2014 Bankr. LEXIS 5204, 2014 WL 7407515,
> at *3 (Bankr. S.D. Miss. Dec. 30, 2014) (citation omitted). Thus, while the Court
> generally accepts the NADA value, it does so with some adjustments. Mr. Banks
> testified that the NADA updated its guidelines in 2015 to include pick-up and
> set-up costs of manufactured homes in appraisals. Although this change is fairly
> recent to Mr. Banks, the inclusion of these costs in appraisals had already
> occurred in other jurisdictions. Courts have uniformly rejected including these
> costs when determining value pursuant to section 506(a). *Gensler*, 2015 Bankr.
> LEXIS 3604, 2015 WL 6443513, at * 3 (citing *In re Carlson*, [Case No. 06-
> 404042,] 2006 Bankr. LEXIS 4405, 2006 WL 4811331 (Bankr. W.D. Wash.
> 2006)); *Fortenberry*, 2014 Bankr. LEXIS 5204, 2014 WL 7407515, at *4; *In re
> Kollmorgen*, [Case No. 11-10904,] 2012 Bankr. LEXIS 282, 2012 WL 195200,
> at *4 n. 25 (Bankr. D. Kan. Jan. 20, 2012) (citing *Carlson*, 2006 Bankr. LEXIS
> 4405, 2006 WL 4811331). These courts reason that *Rash* rejected applying
> foreclosure value because doing so was inconsistent with considering the use and
> disposition of the property, thus value for moving collateral should not be added
> or subtracted when the property is not being relocated. *Id*. This Court agrees
> that *Rash* suggests this conclusion. The $6,000 value of the removal and set-up
> costs should not be included value for section 506(a) purposes.

*Id*. at *21-22. This Court construes § 506(a)(2) and the Supreme Court's opinion in

*Rash* consistently with the bankruptcy courts in *Thornton* and *Eaddy*.

Creditor argues that, in *In re Mullins*, Case No. 14-70700, Order dated June 16,

2015 [ECF No. 62], this Court "has indicated setup and delivery cost to the home's

current location falls within the scope of 'costs of sale or marketing'" under 11 U.S.C.

§ 506(a)(2), and therefore Creditor is entitled to "the cost of replacing the subject mobile

home, as calculated by the cost of setting up and delivering the subject mobile home to

its current location plus the estimated value of the mobile home using the NADA cost

approach." [ECF No. 51 at ¶5.] In the *Mullins* decision, the Court did not state that it is

4

appropriate to include set-up and delivery costs in the appraised value of a mobile home.

Rather, the Court held that the appraiser's report indicated that set-up and delivery costs

already were included within the NADA value of $28,700, and thus providing a "further

upward adjustment"—which is what Creditor demanded—would be inappropriate and

"duplicative." *In re Mullins*, Case No. 14-70700, Order dated June 16, 2015 [ECF No.

62] at 4.

In fact, the debtors in *Mullins* did not contest Creditor's appraiser's conclusion of

value of the mobile home at $28,700 which, according to the appraiser's report,

"include[d] an adjustment for delivery and setup." *Id.* at 1, 3. While the debtors

objected to a further upward adjustment for set-up and delivery costs—and the Court

sustained this objection in its order—the debtors did not seek a downward adjustment of

Creditor's $28,700 appraisal value to subtract out the "adjustment for delivery and

setup" already included therein. In short, there was no dispute between the parties

regarding the set-up and delivery costs included within the $28,700 appraisal value, and

the Court did not, *sua sponte*, reduce Creditor's appraisal to excise those costs when the

debtors did not seek that relief.

For the reasons set forth herein, it is ORDERED that Creditor is not entitled to

increase the replacement value of the manufactured home by $13,125, the estimated

costs to set-up and deliver Debtors' manufactured home to its current location, as those

costs are not properly considered as a component of "replacement value" under § 506(a).

Therefore, Creditor's Objection to Debtors' plan is OVERRULED.

The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Friday, January 06, 2017**
**(tnw)**